IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Alexander Smith, #02962-000,<br><br>       Petitioner,<br><br>  vs.<br><br>John J. LaManna, Warden,<br>FCI-Edgefield; and the United States<br>Parole Commission,<br><br>       Respondents. | Civil Action No. 6:06-1431-CMC-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

  The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

  The petitioner, Alexander Smith, has filed this petition for a writ of habeas corpus. In his petition, he alleges (1) that the Parole Commission has violated the *Ex Post Facto* clause by applying federal parole guidelines in his case; (2) that District of Columbia Municipal Regulations (D.C.M.R.) were not impliedly repealed by the Revitalization Act requiring the Commission to apply only D.C. parole guidelines, and D.C. Code Section 24-209 requires the Commission to apply the same guidelines as the D.C. Board of Parole;

and (3) that the Commission has failed to conduct a timely parole revocation hearing in his case.

The record reveals that the petitioner was convicted in the Superior Court of the District of Columbia and sentenced on June 11, 1984 to a term of 180 days for possession of marijuana (resp. m.s.j., ex. A). The petitioner was sentenced again a few months later on October 24, 1984, to a consecutive term of 8-25 years for attempted armed robbery, 2-6 years for manslaughter, and 3-10 years for carrying a pistol without a license (ex. B). The petitioner was paroled on May 2, 1997, and he was to remain under parole supervision until September 12, 2025 (ex. C).

The D.C. Board of Parole issued a warrant on July 24, 1997, charging the petitioner with possessing and using a deadly weapon and aggravated assault (ex. D). The petitioner was subsequently convicted and sentenced on May 13, 1998, in the Superior Court of the District of Columbia to a term of 5-15 years for aggravated assault and a concurrent term of 180 days for simple assault (ex. E).

The Commission conducted an initial parole hearing in regard to the petitioner's new sentence and, following the hearing, ordered a reconsideration hearing in May 2005 (ex. F). However, the Commission later discovered that in accordance with its regulations the petitioner should have received a combined initial and dispositional revocation hearing. The Commission reopened the petitioner's case to void the previous decision and schedule the required hearing to comply with the regulations (ex. G).

In accordance with the regulations, the petitioner received a combined initial and dispositional revocation hearing on August 2, 2005 (ex. H). Following the hearing, the Commission ordered the revocation of the petitioner's parole, that none of the time spent on parole be credited, and that the petitioner be continued to a reconsideration hearing in August 2008 (ex. I). With regard to the outstanding warrant, the Commission ordered that the warrant be executed when the petitioner is released from his new sentence. The notice

explained that the petitioner's Total Guideline Range was 116-140 months and that the petitioner had been in custody for 84 months at the time of sentencing.

The petitioner appealed the decision to the Commission's National Appeals Board (ex. J). The Board found no merit to the contentions raised by on appeal by the petitioner and, by a Notice of Action dated January 5, 2006, affirmed the previous decision (ex. K).

On July 17, 2006, the respondents filed a motion to dismiss or, in the alternative, motion for summary judgment. By order filed July 18, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 21, 2006, the petitioner filed a motion for summary judgment, to which the respondents responded on December 11, 2006. By order filed November 22, 2006, the petitioner was granted through December 20, 2006, to respond to the respondents' motion to dismiss. When he failed to do so, an order was filed on January 8, 2007, giving him a final opportunity to respond, through February 1, 2007. The petitioner failed to file a timely response. Accordingly, for purposes of this motion, this court will consider the petitioner's motion for summary judgment as his opposition to the respondents' motion.

## APPLICABLE LAW AND ANALYSIS

The respondent has moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment pursuant to Rule 56. As matters outside the pleadings have been presented by the respondent and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

>Rule 56 states, as to a party who has moved for summary judgment:
>
>The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

4

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The respondents first argue that the petitioner has not been subjected to an *ex post facto* punishment. This court agrees. On August 5, 1998, the U.S. Parole Commission ("the Commission") acquired jurisdiction over District of Columbia (D.C.) Code offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231 (a) (1), 111 Stat. 712, 745, D.C. Code § 24-1231(a) ("Revitalization Act"). The Revitalization Act gives the U.S. Parole Commission exclusive jurisdiction over all District of Columbia felony prisoners wherever confined. *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998). The respondents argue that the petitioner fails to recognize that the Revitalization Act, while requiring the Commission to follow District of Columbia parole law and regulations, also authorized the Commission to "amend or supplement" the parole regulations of the District of Columbia as it sees fit. *See* D.C. Code § 24-1231(a)(1)(2001).

Under this authority, the Commission promulgated, between 1998 and 2000, a series of amendments and revisions to the 1987 guidelines of the D.C. Board of Parole. *See* 28 C.F.R. § 2.70 *et. seq.* (the Board's 1987 guidelines remained in effect until August 5, 1998). Among the amendments first adopted by the Commission in 1998 was an expanded version of the "total point score" that is contained in the 1987 guidelines of the D.C. Board of Parole. *See* 28 C.F.R. §2.80 (1999). The Board's 1987 guidelines are described in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996). Under these guidelines, each prisoner was assigned a "salient factor score" which served as "one of the factors used in calculating parole eligibility" by adding or subtracting points for pre- and post- incarceration factors, including whether the prisoner's current conviction

5

"involved violence against a person." This produced a "total point score" which, if not favorable at the prisoner's initial parole hearing, could be worked down to a favorable score after a rehearing, or successive rehearings, if the prisoner managed to earn enough point deductions for positive program achievement. *Id.* at 1415-17.

Under the U.S. Parole Commission's current version of these guidelines at 28 C.F.R. § 2.80 (2001), the "salient factor score" is combined with the 1998 expanded list of pre- and post- incarceration factors (including the prisoner's current and past history of violence), to produce a Base Point Score, which now allows the Commission (in the amended version adopted in 2000) to calculate a Total Guideline Range. *Id.* This Total Guideline Range reflects the total time a prisoner, with a given minimum term and Base Point Score, would be expected to serve until, through positive program achievement, he would have been found suitable for parole under the successive rehearings system described in *Ellis,* 84 F.3d 1413, as modified by the Parole Commission in 1998. *See* 65 Federal Register 70665 (November 27, 2000).

Accordingly, the respondents argue that the petitioner is in error to categorize the D.C. guidelines applied to him by the Commission as "federal guidelines." They contend that the Commission's guidelines for D.C. Code prisoners would more accurately be characterized as an updated version of the 1987 guidelines of the D.C. Board of Parole. In contrast, the real federal parole guidelines, adopted under 18 U.S.C. § 4206 (1976), appear at 28 C.F.R. § 2.20 (2001). Unlike the Commission's guidelines for D.C. Code prisoners at 28 C.F.R. § 2.80, the federal parole guidelines at 28 C.F.R. § 2.20 use an offense severity scale combined with a salient factor score to calculate the applicable guideline range for each prisoner. The Commission establishes presumptive parole dates within these guideline ranges, which take no account of the length of the prisoner's sentence. *See Garcia v. Neagle*, 660 F.2d 983, 989-90 (4th Cir. 1981) (describing the operation of the Commission's guidelines for federal prisoners). The federal parole

6

guidelines do not use a Base Point Score or a Total Point Score and bear little resemblance to any version of the District of Columbia guidelines.

The petitioner committed his crimes in 1983 and 1997, before the August 5, 1998, effective date of the Revitalization Act, so his *ex post facto* claim is that the Commission's revisions of the guidelines described in *Ellis* have increased his punishment in violation of the *Ex Post Facto* Clause of Art. I., § 9, cl.3, of the U.S. Constitution. The respondents argue that changes to paroling policy guidelines of any sort are not capable of imposing *ex post facto* punishment as parole guidelines are discretionary guideposts, not "laws." This court agrees. *See, e.g., Dufresne v. Baer*, 744 F.2d 1543, 1549 (11th Cir. 1984); *Rifai v. U.S. Parole Com'n*, 586 F.2d 695, 698 (9th Cir. 1978); *Inglese v. U.S. Parole Com'n*, 768 F.2d 932, 937-37 (7th Cir. 1985); *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977); *Smith v. U.S. Parole Com'n*, 875 F.2d 1361, 1367 (9th Cir. 1988). *See also Franzese v. Clark*, 732 F. Supp. 653, 653-54 (E.D. Va. 1990) (holding that the *Ex Post Facto* Clause does not apply to "retroactive application of changes in parole guidelines, since the guidelines are not 'laws.'").

Furthermore, the Revitalization Act is not an *ex post facto* law. As explained above, the Revitalization Act only transferred paroling authority from one agency to another. *Franklin*, 163 F. 3d at 632. It placed the Commission under a continuing obligation to follow District of Columbia parole law and rules, but also transferred to the Commission the authority of the Board to "amend or supplement" those rules. *Muhammad v. Mendez*, 200 F. Supp. 2d 466, 470 (M.D. Pa. 2002). Thus, the Revitalization Act has not increased the punishment attached to the petitioner's crimes or brought him under a harsher legal regime than he could have experienced before the Act was passed. Likewise, the Revitalization Act did not change the basic structure of D.C. parole law and left the Commission with the same degree of discretion enjoyed by the Board to apply and revise the D.C. parole regulations and guidelines. *See Muhammad*, 200 F. Supp. 2d at 474.

The respondents next argue that the petitioner cannot show that the Commission's guidelines produce results "materially harsher" than those which the Board was rendering, through the exercise of its discretion, under its 1987 guidelines. *See California Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995) (prisoner must show that the change in the law produced a "sufficient risk of increasing the measure of punishment attached to the covered crimes"). The decisions of the D.C. Court of Appeals make it clear that the 1987 guidelines were no bar to denying parole to prisoners, like the petitioner, who committed a violent criminal offense. *See e.g., McRae v. Hyman*, 667 A.2d 1356, 1360-61 (D.C. 1995) (upholding denial of parole of a violent offender, notwithstanding a favorable point score). The Commission's revisions to the guidelines not only reflected the Board's decisions in this respect, but also the Commission's own practices under the D.C. parole guidelines prior to 1998. *See, e.g., Duckett v. U.S. Parole Com'n*, 795 F. Supp. 133, 137-38 (M.D. Pa. 1992) (upholding a departure from the D.C. guidelines on the basis of the prisoner's multiple separate violent crimes and violent prior record). *See also, White v. Hyman*, 647 A.2d 1175, 1179-80 (D.C. 1994) (upholding the Board's authority to deny parole despite a favorable point score, and to order a 5-year set off based on its determination as to "whether [the prisoner's] release on parole is consistent with public safety."); *Hall v. Henderson*, 672 A. 2d 1047, 1054-55 (D.C. 1996) (upholding decisions by the Board to override the annual rehearing guideline). Accordingly, because the guidelines do not introduce new "federal" factors, do not change the rules on the exercise of discretion, and do not produce results harsher than the Board had the power to order under its 1987 guidelines, they cannot be challenged as *ex post facto* laws. Based upon the foregoing, the petitioner's claim fails.

The respondents next argue that the petitioner's contention that the application of the Commission's amended parole guidelines to all D.C. prisoners within its jurisdiction after August 5, 1998, denies equal protection of the laws with respect to

prisoners who were given parole consideration by the D.C. Board of Parole before August 5, 1998, is erroneous. This court agrees with the respondents that the petitioner has not been denied equal protection of the law. *See Crosby-Bey v. District of Columbia*, 700 F. Supp. 71, 72-73 (D. D.C. 1988) (holding that the D.C. Good Time Credits Act of 1986 did not deny equal protection by treating D.C. prisoners sentenced before the Act differently from those sentenced after the Act). The respondents argue that prisoners in general are not a "suspect class" for equal protection purposes and may be subjected to reforms in statutory law such as exemplified by the Revitalization Act. *See, e.g., Moss v. Clark*, 886 F.2d 686, 690-91 (4th Cir. 1989) (holding that the D.C. City Council could carry out a needed reform (reducing prison overcrowding at Lorton) by establishing a more generous good time system for prisoners housed in D.C. facilities than for prisoners housed in federal facilities, without denying prisoners in federal facilities equal protection of the laws).

District of Columbia Code Section 24-209 (now Section 24-409) merely gave the U.S. Parole Commission the "same power and authority" over D.C. Code prisoners housed in federal facilities as possessed by the D.C. Board of Parole over D.C. Code prisoners housed in D.C. facilities. Although it was held that this law required the Commission to follow the D.C. Board's parole guidelines rather than federal guidelines, *see Cosgrove v. Thornburgh*, 703 F. Supp. 995 (D. D.C. 1988), that state of affairs predated the Revitalization Act. As shown above, the Revitalization Act reaffirmed the Commission's obligation to follow D.C. parole laws and rules but added express authority for the Commission to "amend or supplement" the D.C. Parole regulations. This court agrees with the respondents that the petitioner has no basis for arguing that Section 24-209 in some way trumps the Revitalization Act. The Revitalization Act simply added authority to that conferred by Section 24-209, and the Commission has lawfully exercised its new authority pursuant to the Act.

Furthermore, the 1987 regulations of the Board were not only superseded by the Commission's "amended and supplemented" regulations for D.C. Code prisoners, at 28 C.F.R. § 2.70 *et seq.*, they were also formally repealed. *See* District of Columbia Register, Vol. 47, No. 43 (Friday, October 27, 2000), at 8669. The fact that the Commission published its "amended and supplemented" rules in the Federal Register and the Code of Federal Regulations, as opposed to the District Register and the D.C. Municipal Regulations (D.C.M.R.), reflects the proviso in the Revitalization Act that the Commission may exercise its "amend or supplement" authority provided that it "adheres to the rulemaking procedures set forth in § 4218 of Title 18, United States Code." That Code section requires the Commission to follow the rule making procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, when adopting guidelines for its decisions, and the APA requires regulations to be published in the Federal Register and thereafter in the Code of Federal Regulations. 18 U.S.C. § 4218 (b) (1976). Nonetheless, the rules and guidelines adopted for D.C. prisoners and parolees still constitute a body of regulations specially applicable to D.C. prisoners and occupy a subpart of the Code of Federal Regulations of their own (Subpart C of 28 C.F.R. Part 2).

The petitioner has produced no evidence of Congressional intent, contrary to the plain language of the Revitalization Act, to prohibit the Commission from doing that which the D.C. Board of Parole could do at any time, amend its own paroling policy guidelines. It is a recognized public policy goal that parole decisionmakers be free to respond to the evolving needs of society, as well as improving predictive knowledge about offender behavior, by amending and revising the guidelines by which they make their decisions. *See Warren v. U.S. Parole Commission*, 659 F. 2d 183, 195-96 (D.C. Cir. 1981.

Eligibility for parole means only that the prisoner is entitled to a parole hearing and to be considered for parole. The Constitution does not give prisoners any inherent liberty interest in parole. *See Greenholtz v. Inmates of Nebraska Penal Correctional*

10

*Complex*, 442 U.S. 1, 7 (1979) (holding that there is no inherent or constitutional right for a convicted person to be released prior to the expiration of a valid sentence). Further, it is well settled that the D.C. parole statute and applicable regulations do not create a liberty interest in parole. *Price v. Barry*, 53 F. 3d 369, 370 (D.C. Cir. 1995) (holding that the District of Columbia Code did not create an expectancy of release). Just because negative factors on the prisoner's record are reflected in a guideline evaluation that results in a decision to deny parole does not mean that the prisoner has been denied "meaningful" consideration for parole. *See United States v. Galoob*, 573 F. 2d 1167, 1170 (10th Cir. 1978). A high total point score under the 1987 guidelines of the D.C. Board of Parole would have exactly the same effect. *See Ellis v. District of Columbia*, 84 F.3d at 1416.

Pursuant to its authority under the Revitalization Act, the Commission promulgated between 1998 and 2000 a series of amendments and revisions to the 1987 guidelines of the D.C. Board of Parole. *See* 28 C.F.R. § 2.70 *et. seq*. The amended rule for warrants placed as detainers and dispositional reviews is published at 28 C.F.R. § 2.100. For prisoners like the petitioner serving a new sentence of imprisonment who are eligible for parole, the Commission's rule states that a dispositional revocation hearing will be held simultaneously with the prisoner's initial hearing. *Id.* at § 2.100(b). In the petitioner's case, the Commission conducted an initial parole hearing on his assault offenses (resp. m.s.j., ex. F). A dispositional revocation hearing was not conducted simultaneously with the initial hearing. Therefore, in accordance with the Commission's procedure issued in December 2001, the Commission reopened the petitioner's case to conduct the combined initial and dispositional revocation hearing (resp. m.s.j., ex. H). The Commission has ordered the execution of the violator warrant once the petitioner is paroled from his new sentence. *See Moody v. Daggett*, 429 U.S. 78, 88-89 (1976). Thus, as argued by the respondents, the Commission has followed its procedure in the petitioner's case by conducting the dispositional revocation hearing.

11

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted and the petitioner's motion for summary judgment be denied.

                                                s/William M. Catoe
                                                United States Magistrate Judge

February 7, 2007

Greenville, South Carolina